CHARLES ESCH, Respondent, v. P. HIRNING, Appellant.

St. Louis Court of Appeals, May 16, 1899.

Forcible Entry and Detainer: DEMURRER TO THE EVIDENCE.    In the case at bar it is clearly shown that defendant was the first to leave the premises, and if it be conceded that plaintiff subsequently abandoned the premises on account of his fears of the future behavior of defendant, still there is an insurmountable difficulty in the way of a recovery growing out of the total lack of any evidence that defendant recovered possession after he was driven off by the plaintiff and was also in possession on the date of the institution of this suit.    Held, that the demurrer to the evidence should have been sustained.

*Appeal from the Stone Circuit Court.*—HON. J. C. LAMSON, Judge.

REVERSED.

O. E. GORMAN for respondent.

The manner of defendant's entry into plaintiff's field; his threat that he would "fix" plaintiff if he ever caught plaintiff on the premises again, clearly show that defendant's entry

was for the sole purpose of obtaining and detaining possession of the premises from plaintiff. This evidence, taken together with the evidence regarding the location of defendant's residence with reference to plaintiff's field, and the further fact that no one was seen upon this field again until after the commencement of this action, were facts and circumstances to submit to the jury under proper instructions, whether or not defendant forcibly entered, as defined by section 5088, Revised Statutes 1889, and whether defendant detained possession of the premises thereafter, and was in possession at the date of the commencement of this action, November 16, 1897. Keen v. Schweigler, 70 Mo. App. 409; State v. Vansickle, 57 Mo. App. 611; Wensch v. Gretel, 26 Mo. 580; Willis v. Stevens, 24 Mo. App. 494; 8 Am. and Eng. Ency. of Law, p. 116, sec. 1.

C. C. MATLOCK and I. V. McPHEARSON for appellant.

Regarded in the light most favorable to plaintiff, his evidence shows only a trespass or mere breach of the peace by defendant, and not a forcible entry and detainer in the meaning of Revised Statutes 1889, section 5088, at page 1240, the object of the action being to remove an intruder and restore the premises to him entitled thereto. Tipton v. Swain, 4 Mo. 98 and 99; Rouse v. Dean, 9 Mo. 301; Roberts v. Lynch, 15 Mo. App. 456. Therefore the court should have given defendant's instruction requiring the jury to find the defendant not guilty. Forcible entry and detainer can not be committed without the defendant is shown by the evidence to be in the actual possession of the land charged to have been forcibly entered and detained by him at the commencement of the suit, and this is true without regard to the manner of defendant's entry, whether he enter with force or strong hand, or with weapons, or by breaking open the doors or windows or other parts of a house, or whether he enter by threatening to kill, maim or beat the party in possession or whether he enter by

such words or actions as have a natural tendency to excite fear or apprehension of danger, or any other method of entering described in the law. In any such case the defendant is not guilty unless he detain and hold the said lands. There being no evidence to show appellant entered under such circumstances as naturally excite fear or apprehension of danger, instructions 1 and 2 should not have been given as there was no theory presented by the evidence, upon which they were based. White v. Chaney, 20 Mo. App. 389; Bank v. Overall, 16 Mo. App. 510; Skyles v. Bollman, 85 Mo. 35.

BOND, J.—This is an action of forcible entry and detainer, wherein judgment is prayed for restitution of the premises and damages caused by the ejection of plaintiff. It was begun on November 16, 1897, before a justice, taken by certiorari to the circuit court, where plaintiff had judgment, and appealed by defendant to this court.

The first error complained of is the refusal of the circuit court to direct a verdict for defendant upon the evidence adduced by plaintiff. The testimony of plaintiff was as follows:

"My name is Charles Esch. I am plaintiff in this case. In the year 1897 I cultivated in corn about 23 acres of the Hirning farm, I had put in some wheat on another part of said farm the fall before and in the summer of '97 had reaped the wheat. This land was in Stone county, Missouri (describing it). On the 21st day of October, 1897, I was in the field snapping off corn and throwing it in piles. I had a team to do hauling. I had been working there all summer. I had possession of the land. The corn was mine. The corn was dry and in snapping it made a noise. I threw some corn on a pile. Mr. Hirning was going along and stopped me and says: 'What are you doing here?' I says: 'I am gathering corn.' He says: 'You have no business here. I want you to get out of here.' I told him I wouldn't leave the field. I wanted to gather the corn first. I said that and he threw a rock at me and I hit him in the face with my left hand, I think, two or

three licks and he fell to the ground. He said he would quit then. I told him if he would go about his business and let me alone I would let him go; so I let him up. He runs to the house and says: 'I will fix it with you for that.' He told it in German. I was afraid then. I didn't even take time to get my coat, but went out the south side of the TESTIMONY. field and left the place. I was in the corn field when this happened. He said if he caught me there again he would fix it with me. I did not go back upon the premises any more. I left my coat there and sent Engle-hart back after it. I was not back there any more until January, when I went back and husked the corn. When I went back the last of January or first part of February, 1898, the corn was all down and washed over, at least most of it, and nearly all of it rotten." * * * "Hirning lived north of this land on another forty. I had rented this land from Hirning. I told Hirning if he would behave himself I would let him up. He went to another end of the field and I went out of the opposite side and left. I have never went back there myself or sent anyone else back for me except I sent my son-in-law back after my coat. I never saw Hirning on the place afterwards. Going to this field I went through a gate west of Hirning's house about 300 feet. This was the only way into the land without going over the plowed ground, which I had been told not to do by the owner of the land. The reason I didn't go into this field again after October 21st, was because I was afraid to. Afraid old man Hirning would hurt me."

There is no evidence in the record that defendant ever re-entered upon the land after he fled therefrom as the result of his encounter with plaintiff, nor is there any evidence that he ever made any other threat than the parthian arrow which he shot on his retreat from the field, when he said to plaintiff "I will fix you for that." It is elementary law, that the action of forcible entry and detainer can only be maintained

upon proof, first, of a dispossession in the statutory sense; and secondly, actual possession in the disseizor at the time the suit is brought.    In this case it is clearly shown that defendant was the first to leave the premises, and if it be conceded that plaintiff subsequently abandoned the premises on account of his fears of the future behavior of defendant, still there is an insurmountable difficulty in the way of a recovery growing out of the total lack of any evidence that defendant recovered possession after he was driven off by the plaintiff and was also in possession on the date of the institution of this suit.    As all the witnesses testified that defendant never returned, nor did anything further to prevent plaintiff from continuing the possession which he had successfully maintained by force of arms, there was an essential omission in the proof necessary to sustain this action, and the learned trial judge should have sustained the demurrer to the evidence.    For his failure so to do, the judgment is reversed.    All concur.